IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UPPER MERION AREA SCHOOL DISTRICT | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| Z.B., by and through his parents, B.B. and C.B., and B.B. and C.B. in their own right | : | NO. 21-3053 |

**MEMORANDUM**

**Padova, J.**                                                                                                              **May 3, 2022**

Plaintiff Upper Merion Area School District (the "School District") has filed this action pursuant to the Individuals with Disabilities Education Improvement Act of 2004, 20 U.S.C. §§ 1401-1482 (the "IDEA"), as an appeal of the final administrative decision of a Hearing Officer in the administrative special education due process hearing proceedings brought against the School District by Z.B., through his parents B.B. and C.B. Defendants oppose the School District's appeal of the Hearing Officer's decision and have brought Counterclaims seeking affirmation of the Hearing Officer's decision, as well as compensatory damages, attorney's fees, and costs under the IDEA, Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 (the "Rehabilitation Act"), and Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131-12134 (the "ADA"). Plaintiff has filed a Motion to Dismiss Count II of Defendants' Counterclaim, which seeks relief under the Rehabilitation Act and the ADA. For the following reasons, we grant the Motion to Dismiss and dismiss Count II of Defendants' Counterclaim without prejudice.

**I.      FACTUAL BACKGROUND**

The Complaint alleges that Z.B. is a child with a disability who needs special education and related services under the IDEA. (Compl. ¶ 7.) Z.B. became eligible to receive services from the School District when he started kindergarten in August of 2020. (Id. ¶ 8.) His parents agreed

to an IEP that would provide him with a one to one aid. (Id. ¶ 9.) Because of the COVID-19 pandemic, parts of the 2020-21 school year were held completely virtually and other parts were held in person. (Id. ¶ 10.) Students were given the option to stay fully virtual even when the School District had in-person instruction. (Id.) Z.B. attended school in-person, to the extent he was permitted to do so, from September 2020 until November 2020, and was fully virtual from November 2020 through the end of the school year. (Id. ¶ 11.) From November 2020 through January 2021, Z.B. would log in to virtual instruction for purposes of attendance. (Id. ¶ 12,) However, he did not log in for special education classes. (Id.) Z.B.'s parents demanded that the aide provided for in the IEP be provided in-person at all times, even when Z.B. was attending school from home fully virtually. (Id. ¶13.) The School District, however, provided the aide only virtually "due to health and safety concerns of sending school staff into a Student's home during the global pandemic." (Id.)

In December of 2020, Defendants instituted administrative special education due process hearing proceedings against the School District under the IDEA. (Id. ¶ 14.) The Hearing Officer held three sessions of hearings in February and March of 2021. (Id. ¶ 17.) The Hearing Officer found that the School District denied Z.B. a Fair Appropriate Public Education ("FAPE") "by not providing a one to one aide in-person during virtual instruction." (Id. ¶ 19.) The Hearing Officer's order requires the School District "to provide a one to one aide in-person moving forward to the extent health and safety standards permit it, and awarded 6.15 hours per day of compensatory education for each day [Z.B.] was in virtual instruction and was not provided a one to one aide in-person in his home." (Id.)

Defendants' Counterclaim alleges the following facts. The Hearing Officer's decision establishes that the School District violated Defendants' rights under the IDEA and Section 504

of the Rehabilitation Act by failing to provide a FAPE to Z.B. (Ans. & Countercl. ¶ 25.) The School District has deprived Z.B. of the benefits of its educational program because of his disability "by refusing to provide him with a one to one in-person aide during virtual instruction as required by his IEP and as a necessary and reasonable accommodation." (Id. ¶ 32.) As of April 12, 2021, the date of the Hearing Officer's order, there were approximately two months remaining in the 2020-21 school year. (Id. ¶ 33.) After April 12, 2021, the School District failed to deliver appropriate services to Z.B. as ordered by the Hearing Officer, thus failing to provide Z.B. with a FAPE. (Id.) The School District has deliberately failed to comply with the Order of the Hearing Officer "by failing to take any reasonable steps to determine whether the provision of a one to one aide in Z.B.'s . . . home would contravene prevailing community health and safety standards." (Id. ¶ 34.) The School District's failure to comply with the Hearing Officer's order constitutes deliberate indifference to its obligations to Defendants and thus intentional discrimination against Defendants. (Id. ¶ 38.) The School District's refusal to comply with the Order was retaliatory against Z.B. and his parents for their successful prosecution of their claims against the School District. (Id. ¶ 39.) Defendants have sustained damages resulting from the School District's actions including "regression, lack of progress, stress and emotional damage, loss of companionship, loss of income, and pain and suffering." (Id. ¶ 40.) Defendants ask the Court to affirm the decision of the Hearing Officer; award them compensatory damages for their injuries caused by the School District's intentionally discriminatory and retaliatory conduct; and award them reasonable attorneys' fees and costs incurred in both the administrative proceeding and the instant action, including interest.

      The School District moves to dismiss Count II of the Counterclaim on the ground that Defendants failed to exhaust their administrative remedies with respect to the claims asserted in

this Count so that this Court lacks jurisdiction over those claims. The School District also argues, in the alternative, that Count II should be dismissed because the Counterclaim fails to plausibly allege that the School District's actions were retaliatory or that the School District was deliberately indifferent to Defendants' federally protected rights.

## II. LEGAL STANDARD

Defendant moves to dismiss under both Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and under Rule 12(b)(6) for a failure to state a claim upon which relief can be granted. "'When a motion under Federal Rule of Civil Procedure 12 is based on several grounds, a court should first consider a 12(b)(1) challenge because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot.'" McCracken v. R.J. Reynolds Tobacco Co., Civ. A. No. 17-4495, 2018 WL 692934, at *2 n.22 (E.D. Pa. Feb. 2, 2018) (quoting Wayne Land & Mineral Grp., LLC v. Delaware River Basin Comm'n, 247 F. Supp. 3d 477, 491 (M.D. Pa. 2017), vacated on other grounds 894 F.3d 509 (3d Cir. 2018)); see also Curtis v. Unionville-Chadds Ford Sch. Dist., Civ. A. No. 12-4786, 2013 WL 1874919, at *3 (E.D. Pa. May 1, 2013) ("When a motion under Rule 12 is 'based on more than one ground, the court should consider the Rule 12(b)(1) challenge first since if it must dismiss the complaint for lack of subject matter jurisdiction, the accompanying defenses and objections become moot and do not need to be determined.'" (quoting Jeffrey Banks, Ltd. v. Jos. A. Bank Clothiers, Inc., 619 F. Supp. 998, 1001 n.7 (D. Md. 1985))).

When a party argues that subject matter jurisdiction is lacking under Rule 12(b)(1), we must first "determine whether the challenge is a facial attack or a factual attack." GBForefront, L.P. v. Forefront Mgmt. Grp., LLC, 888 F.3d 29, 35 (3d Cir. 2018) (citing Constitution Party of Pa. v. Aichele, 757 F.3d 347, 357 (3d Cir. 2014)). "A facial attack . . . is an argument that considers

4

a claim on its face and asserts that it is insufficient to invoke subject matter jurisdiction." Id. (alteration in original) (quoting Const. Party of Pa., 757 F.3d at 358). "'A factual attack . . . is an argument that there is no subject matter jurisdiction because the facts of the case . . . do not support the asserted jurisdiction.'" Id. (second alteration in original) (quoting Const. Party of Pa., 757 F.3d at 358).

The School District's argument regarding our subject matter jurisdiction does not depend on any evidence outside of the facts alleged in the Complaint and Counterclaim and thus constitutes a facial attack on our subject matter jurisdiction. "In reviewing a facial attack, 'the court must only consider the allegations of the [counterclaim] and documents referenced therein and attached thereto, in the light most favorable to the [party asserting the claim].'" Const. Party of Pa., 757 F.3d at 358 (quoting In re Schering Plough Corp. Intron/Temodar Consumer Class Action, 678 F.3d 235, 243 (3d Cir. 2012)). "Thus, a facial attack calls for a district court to apply the same standard of review it would use in considering a motion to dismiss under Rule 12(b)(6), i.e., construing the alleged facts in favor of the nonmoving party." Id. (citation omitted). However, "proceeding under Rule 12(b)(1) inverts the burden of persuasion. When presenting a Rule 12(b)(6) motion, the [movant] bears the burden to show that the [counterclaim] plaintiff has not stated a claim. But under Rule 12(b)(1), the [counterclaim] plaintiff must prove the court has subject matter jurisdiction." Davis v. Wells Fargo, 824 F.3d 333, 349 (3d Cir. 2016) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (1991)).

### III.   DISCUSSION

The School District maintains that we lack subject matter jurisdiction over Count II of Defendants' Counterclaim because Defendants have failed to exhaust their administrative remedies with respect to the claims of retaliation and discrimination asserted in this Count, as a

result of which this Court lacks jurisdiction over those claims. Count II asserts claims against the School District for discrimination and retaliation under Section 504 of the Rehabilitation Act and under Title II of the ADA for failure to implement Z.B.'s IEP and provide him with a FAPE. (Ans. & Countercl. ¶¶ 32-39.) The School District relies on School District of Philadelphia v. Post, Civ. A. No. 15-4501, 2017 WL 3676970 (E.D. Pa. Aug. 23, 2017).

In Post, the Court noted that "[g]enerally, 'completion of the IDEA's administrative process, i.e., exhaustion, . . . is required in order for the [IDEA] to grant[ ] subject matter jurisdiction to the district court[ ].'" Id. at *6 (second through fifth alterations in original) (quoting Batchelor v. Rose Tree Media Sch. Dist., 759 F.3d 266, 272 (3d Cir. 2014)). "This basic precept of the IDEA framework applies not just to claims actually brought under the IDEA but also to any claim seeking relief that is 'available' under the IDEA." Id. (citing 20 U.S.C. § 1415(l)). In Post, the parents/defendants had asserted "a counterclaim for retaliation under the IDEA, Section 504, and the ADA." Id. The Post court noted that such a counterclaim "fits squarely into the Third Circuit's holding in Batchelor that 'retaliation claims related to the enforcement of rights under the IDEA must be exhausted before a court may assert subject matter jurisdiction.'" Id. (quoting Batchelor, 759 F.3d at 273-75). The retaliation claims brought by the parents/defendants in Post had not been asserted at the administrative level and were thus unexhausted. Id. The Post court concluded that it thus would not have subject matter jurisdiction over the parents/defendants' retaliation claims and any other claims based on allegations that the "District committed further IDEA, Section 504, and/or ADA violations subsequent to the alleged violations before the Hearing Officer" until the parents/defendants brought those claims through "the IDEA's prescribed administrative process." Id. at *8 (citing Batchelor, 759 F.3d at 272-3).

Defendants argue that they were not required to exhaust their ADA and Section 504 counterclaim because Count II of the Counterclaim addresses discrimination that is not actionable under the IDEA and they seek remedies that are not available under the IDEA. Count II of the Counterclaim pertains to the School District's actions after the Hearing Officer's April 12, 2021 Order. As we described above, the Counterclaim alleges that Defendants prevailed in their due process proceeding before the Hearing Officer, who concluded that the School District "had failed to provide a free appropriate public education to Z.B." and ordered the School District, beginning on the date of the Order, "to provide Z.B. with an in-person one to one aide during virtual instruction unless doing so would contravene prevailing community health and safety standards." (Ans. & Countercl. ¶ 26.) The Counterclaim further alleges that the School District deliberately "failed to deliver appropriate services ordered as necessary to provide a free appropriate public education to Z.B." for the two months remaining in the school year following the Hearing Officer's order and that its failure to comply with the order requiring it to implement Z.B.'s IEP as written "was retaliatory against Z.B. and his Parents for their successful prosecution of their claims against the District." (Id. ¶¶ 33-34, 39.)

Section 1415(f) of the IDEA provides the procedures to be followed for an impartial due process hearing after a complaint has been filed with respect to the educational placement of a child or the provision of a FAPE to the child. 20 U.S.C. § 1415 (b), (f). Section 1415(g) of the IDEA provides that a party may appeal a decision made following the due process hearing. 20 U.S.C. § 1415(g). Section 1415(l) of the IDEA provides that "before the filing of a civil action under [the Constitution, the ADA, title V of the Rehabilitation Act of 1973 or other Federal laws protecting the rights of children with disabilities] the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this

subchapter." 20 U.S.C. § 1415(l).  As the Supreme Court has explained, "Section 1415(*l*) requires that a plaintiff exhaust the IDEA's procedures before filing an action under the ADA, the Rehabilitation Act, or similar laws when (but only when) her suit 'seek[s] relief that is also available' under the IDEA." Fry v. Napoleon Cmty. Schs., 137 S. Ct. 743, 752 (2017) (alteration in original).  The Supreme Court held in Fry that the exhaustion requirement applies only to lawsuits that "seek relief for the denial of a FAPE, because that is the only 'relief' the IDEA makes 'available.'" Id.  "[I]n determining whether a suit indeed 'seeks' relief for such a denial, a court should look to the substance, or gravamen, of the plaintiff's complaint." Id.  The Supreme Court has suggested that we consider two hypothetical questions to determine the gravamen of the claim at issue:

> One clue to whether the gravamen of a complaint against a school concerns the denial of a FAPE, or instead addresses disability-based discrimination, can come from asking a pair of hypothetical questions.  First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school—say, a public theater or library?  And second, could an adult at the school—say, an employee or visitor—have pressed essentially the same grievance?  When the answer to those questions is yes, a complaint that does not expressly allege the denial of a FAPE is also unlikely to be truly about that subject; after all, in those other situations there is no FAPE obligation and yet the same basic suit could go forward.  But when the answer is no, then the complaint probably does concern a FAPE, even if it does not explicitly say so; for the FAPE requirement is all that explains why only a child in the school setting (not an adult in that setting or a child in some other) has a viable claim.

Id. at 756. The Supreme Court has also suggested that, in determining the gravamen of the complaint, the courts should look at the history of the proceeding, specifically, whether the party asserting the claim "has previously invoked the IDEA's formal procedures to handle the dispute." Id. at 757.

In this case, Count II of Defendants' Counterclaim specifically alleges that, following the Hearing Officer's April 11, 2021 order, the School District "failed to deliver appropriate services

ordered as necessary to provide a free appropriate public education to Z.B." (Ans. & Countercl. ¶ 33.) Count II also alleges that this failure was deliberate on the part of the School District and in retaliation for Defendants' success before the Hearing Officer. (Id. ¶¶ 38-39.) Accordingly, the conduct at issue could not have occurred outside of the school setting, nor could these claims have been brought by an adult visitor to Z.B.'s school. Fry, 137 S. Ct. at 756. Moreover, these claims pertain specifically to Defendants' prior invocation of "the IDEA's formal procedures to handle the dispute." Id. We conclude, accordingly, that Claim II of Defendants' Counterclaim "seek[s] relief for the denial of a FAPE" and that Defendants were required to exhaust the ADA and Rehabilitation Act claims alleged in Count II of the Counterclaim pursuant to § 1415(l). Id. at 752. See also T.R. v. Sch. Dist. of Philadelphia, 4 F.4th 179, 193-96 (3d Cir. 2021) (concluding that the denial of a FAPE was the gravamen of plaintiffs' claims for violation of Section 504, the ADA, and Title VI of the Civil Rights Act arising from the school district's alleged failure to provide adequate translation services for parents because the alleged failure "compromised the educational services provided to [students] and the meaningful participation rights of the [parents]"). Moreover, the Third Circuit has specifically found that claims of retaliation for parents' participation in due process proceedings under the IDEA should be exhausted pursuant to § 1514(l). See S.D. by A.D. v. Haddon Heights Bd. of Educ., 722 F. App'x 119, 126-27 (3d Cir. 2018) (concluding that parents' claims asserted pursuant to the ADA, Section 504, and 42 U.S.C. § 1983 that the school district retaliated against them for participating in a due process hearing by preventing their son from making education progress should be dismissed without prejudice because these claims were not exhausted through the IDEA's administrative process); Batchelor, 759 F.3d at 273-74 (holding that "a claim that a school district retaliated against a child and/or the child's parents for enforcing the child's rights under the IDEA . . . are related to the provision of

9

FAPE under 20 U.S.C. § 1415(b)(6) and, as such, must be exhausted"); see also Post, 2017 WL 3676970, at *8 ("Any retaliation suffered by Parents following the completion of the administrative review, as well as any claim by Parents that the District committed further IDEA, Section 504, and/or ADA violations subsequent to the alleged violations before the Hearing Officer, are separate issues that must be remedied by the IDEA's prescribed administrative process.  Unless and until Parents go through that process, this Court has no subject matter jurisdiction over those claims." (citing Batchelor, 759 F.3d at 272-73)).

"Our conclusion does not change because [Defendants] requested money damages, which are not available under the IDEA and cannot be awarded at an administrative hearing." J.L. by & through Leduc v. Wyoming Valley W. Sch. Dist., 722 F. App'x 190, 194 (3d Cir. 2018) (citing Batchelor, 759 F.3d at 276).  The Third Circuit has explained the existence of a demand for monetary damages "'is not dispositive' because (1) the [claim] did not seek money damages exclusively, (2) district courts are empowered to grant relief beyond that requested, and (3) money damages may sometimes be awarded as reimbursement." Id. (quoting Batchelor, 759 F.3d at 276-77) (additional citation omitted).  Since Defendants failed to exhaust the claims asserted in Count II of the Counterclaim, we lack subject matter jurisdiction to hear them.  See Wellman v. Butler Area Sch. Dist., 877 F.3d 125, 130 (3d Cir. 2017) ("In Batchelor, this Court held that exhaustion of the IDEA administrative process is normally required for a District Court to exercise subject matter jurisdiction." (citing Batchelor, 759 F.3d at 272)).  Accordingly, we grant the Motion to Dismiss and dismiss Count II of the Counterclaim without prejudice.[1]

---

[1] As we grant the Motion to Dismiss because we lack subject matter jurisdiction over the claims asserted in Count II of the Counterclaim, we need not address whether Count II states claims upon which relief can be granted.  See McCracken, 2018 WL 692934, at *2 n.22 ("When a motion under Federal Rule of Civil Procedure 12 is based on several grounds, a court should first consider

## IV.     CONCLUSION

For the foregoing reasons, we grant Plaintiffs' Motion to Dismiss and dismiss Count II of Defendants' Counterclaim without prejudice.

BY THE COURT:

/s/ John R. Padova

_____
John R. Padova, J.

---

a 12(b)(1) challenge because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses and objections become moot." (quotation omitted)).